UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ARMANDO CRESCENZI, JAMES KENNEDY, ALBERT SIMMONS, HOWARD DALTON and ORAL FIELDS

                        Plaintiffs,

                -against-

THE CITY OF NEW YORK, P.O. ASHA HARRIS, SHIELD NO. 160096, Individually and in his Official Capacity, P.O. BRUCE LANGSTON, SHIELD NO. 160440, Individually and in his Official Capacity, VERONICA M. WHITE, Chairman of the New York City Department of Parks and Recreation, Individually and in her Official Capacity, and P.O. "JOHN DOE" #1-10 Individually and in their Official Capacity (the name John Doe being fictitious as the true names are unknown),

                        Defendants.

-------------------------------------------------------------------X

**AMENDED COMPLAINT**

**13 CV 00822**

**JURY TRIAL DEMANDED**

**ECF CASE**

      Plaintiffs Armando Crescenzi, James Kennedy, Albert Simmons, Howard Dalton and Oral Fields, by their attorneys, Cohen & Fitch LLP, complaining of the defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

      1.     Plaintiffs bring this action on behalf of themselves seeking compensatory damages, injunctive relief, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of their civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

      2.     Under a pattern and practice set and enforced by city officials, the New York City Department of Parks and Recreation ("NYDPR"), including P.O. B. LANGSTON, SHIELD NO.

160440, P.O. ASHA HARRIS, SHIELD NO. 160096 and P.O. "JOHN DOE"'s #1-10 are unconstitutionally and illegally enforcing the provisions of the Title 56 of the Rules of the City of New York ("RCNY") against disabled veterans who have obtained a Specialized Vending Licenses ("SVL") and who are legally permitted to vend in certain restricted areas pursuant to New York State General Business Law ("GBL") Section 35-a.

3.     Specifically they are being stopped, searched, seized, arrested and issued summonses without probable cause in response the City's desire to constructively remove disabled veterans from these locations because of the financial incentive to secure non-disabled tenants who can be force to pay rent to vend in these locations.

4.     In furtherance of this policy, pattern and practice, officers are being explicitly and/or implicitly instructed to issue summonses in direct contravention of GBL 35-a when no crime or violation of law has occurred in order to force these disabled veterans to leave areas in which they are legally entitled to be with actual and/or constructive knowledge that the statute upon which these arrests and summonses are based - namely, Title 56 of the RCNY - is either inapplicable and/or superseded by the GBL as it pertains to disabled veterans.

5.     Further, despite being on notice from numerous appellate decisions from the New York City Environmental Control Board ("ECB") that the provisions of Title 56 of the RCNY do not apply to disabled veterans vendors and the fact that thousands of these illegal tickets are dismissed every year, the City has shown a deliberate indifference to training and educating NYDPR officers regarding the proper application of these statutes in order to ensure the disabled vendor's rights are not continuously being violated.

6.     The goal of this practice is to drive disabled veterans, who have a statutory right to vend in these locations *and* who cannot be "lawfully" ordered to move absent non-compliance

with the GBL, out of these locations in order to lease these spots to non-disabled vendors who are required to pay substantial amounts for the ability to vend in these same locations.

7.     The effect of this practice has literally caused *hundreds* of unconstitutional arrests and has required the plaintiff's herein to make hundreds of court appearances and pay tens of thousands of dollars in fines only to have these tickets and fines eventually dismissed and rescinded by the ECB in direct violation of their rights under the Fourth Amendment.

8.     This practice of selectively prosecuting and/or enforcing this inapplicable statute *only* against disabled veterans vendors while leaving able bodied vendors free from false arrest and harassment is also impermissible under the Fifth and Fourteenth Amendments of the Constitution.

**The City has Been on Notice for Years of the Inapplicability of the RCNY to Disabled Veterans holding SVL's**

9.     The plaintiff's herein have received hundreds of summonses citing them for violating several provisions of Title 56 of the RCNY - namely, sections 1-03(b)(6), 1-03(c)(1) and 1-05(b) - however, GBL § 35, *not* the RCNY, is the relevant statute that regulates disabled vendors and in fact supersedes the RCNY in its regulation of disabled vendors.

10.     The relevant portion of GBL 35-a provides:

> Subject to the provisions of this section but *notwithstanding* any inconsistent provisions of any general, special or local law:
>
> In cities having a population of one million or more, the official designated by a local law or ordinance to issue a local license to hawk, peddle, vend and sell goods, wares or merchandise or solicit trade upon the streets and highways within such city shall issue specialized vending licenses to honorably discharged members of the armed forces of the United States who are physically disabled as a result of injuries received while in the service of said armed forces and who are eligible to hold licenses granted pursuant to section thirty-two of this article. Such specialized vending licenses shall authorize holders thereof to hawk or peddle within such city in accordance with the provisions contained in this

section. Specialized vending licenses issued under this  section  shall permit  the  holders thereof to vend on any block face, and no licensee authorized under this section  shall be restricted in any way from vending in any area, except as provided in this section.

11.    The three relevant sections of Title 56 of the RCNY provide:

§1-03(b)(6):

No person shall conduct any activity for which a permit is required unless such permit has been issued;

§1-03(c)(1):

No person shall fail, neglect or refuse to comply with the *lawful* direction or command of any Police Officer, Urban Park Ranger, Parks Enforcement Patrol Officer or other Department employee, indicated by gesture or otherwise.

§1-05(b):

No person in any park, or street adjacent to or abutting a park (including all public sidewalks of such abutting streets) shall sell, offer for sale, hire, lease or let anything whatsoever, or provide or offer to provide services or items in exchange for a donation (hereinafter "vend"), except under and within the terms of a permit, or except as *otherwise provided by law*.

12.    When applied to disabled veterans with an SVL, however, GBL 35-a supersedes the requirements of Title 56 of the RCNY, thus making 56 RCNY § 103(b)(6) and 1-05(b) inapplicable to them as a matter of law.  See City of New York v. Sung H. Kim, ECB Appeal No. 41644 (Decision and Order January 22, 2009)("The more restrictive prohibition contained in 56 RCNY §1-05(b) is superseded by GBL § 35-a(7)(l)(vi).").

13.    Consequently, the RCNY, which regulates non-disabled vendors, does not apply to disabled veterans with SVL's who are permitted to vend in areas otherwise prohibited under the RCNY and are only subject to the limitations set forth in the GBL § 35(3)-(7).  See NYC v. Alfred Miles, ECB Appeal NO 1100944 (Decision and Order February 16, 2012)("Holders of SVL's may vend a certain locations  not  otherwise  authorized  for  general  vendors...[thus]

subdivision three of GBL § 35-a is applicable, which subjects Respondent *only* to those restrictions found in subdivision seven of the same statute.").

14.    Similarly, unless a disabled SVL holder is in violation of GBL 35(3)-(7), any command to move or leave the premises cannot be deemed "lawful" under RCNY 1-03(c)(1). See <u>NYC v. Albert Simmons</u>, ECB Appeal No. 1101287 (Decision and Order April 26, 2012)("Consequently, the Board finds that in each case IO's direction not 'a lawful direction or command' such that Respondent's failure to comply would make out a violation of 56 RCNY 1-03(c)(1).").

15.    Accordingly, to stop, detain, arrest and issue a summons to any disabled veteran for a violation of 56 RCNY 1-03(b)(6) or 1-05(b) is per se unconstitutional as it is *impossible* for a disabled veteran carrying a valid SVL to violate any of those sections.

16.    Further, to stop, detain, arrest and issue a summons to any disabled veteran carrying a valid SVL for a violation of RCNY 1-03(c)(1) when no *lawful* command has been issued, or when the lawful command was made pursuant to an erroneous understanding of the law as applied to disabled veterans, is illegal and a violation of their constitutional rights.

17.    As such, for any member of the NYDPR to stop, detain, arrest and issue a summons to any disabled veteran possessing a valid SVL for a violation of any of the aforementioned sections of the RCNY is per se illegal and a violation of their civil rights under the Fourth Amendment to the Constitution.

18.    Additionally, for members of the NYDPR to selectively enforce sections of the RCNY - whether or not they are inapplicable - against only disabled veterans for the improper purpose of dislocating them from areas where they are legally entitled to vend is a violations of their rights under the Fifth and Fourteenth Amendments to the Constitution.

**The City's Policy of Falsely Arresting and Selectively Prosecuting Disabled Veterans is Motivated by Malice and Improper Motives**

19.     Normally, in order to vend in areas immediately outside New York City parks or in close proximity thereto, non-disabled vendors have to bid for leases on the areas where they desire to vend in order to secure permits to vend at those locations.

20.     While the licensing fees are relatively non-prohibitive, in many instances the costs for leasing a specific space are exorbitant and extremely expensive - ranging from thousands to hundreds of thousands of dollars per year.  See Jessica Simeone, *Bitter Vend at Met*, N.Y. POST, Aug. 27, 2012 ("$643,000 a year for the right to station two carts in front of the Met.").

21.     Further, these non-SVL holders must "bid" for these leases, creating an auctioning war between the non-disabled vendors who wish to obtain these "desired" locations thus driving up the cost for the available spaces and the potential for revenue for the City.

22.     Additionally, each year when the leases expire, they cannot simply be renewed, but rather a new bidding war has to take place before any leases are renewed thereby enabling the highest bidder to obtain the lease despite any interest of the prior leaseholder, which again drives up the cost of available space and enables the City to maximize its revenue despite any consequences to the vendors.

23.     Upon information and belief these bidding wars generate tens of millions of dollars in revenue for the City, which fuels the motivation to ensure that *paying* vendors are occupying these spots.

24.     Further the City believes that allowing disabled veterans, who have been granted an exception to the RCNY and who are legally entitled to vend in these locations free of cost,

generally discourages paying non-disabled vendors from bidding on these otherwise high-revenue spots, thus depriving the City from the monetary gain it would receive but for the disabled veterans from vending in those locations.

25.      As a result, the City has a vested interest to remove these disabled veterans who possess SVL's from these areas - often near the parks - in order to gain the financial benefit of high-paying non-disabled tenants, thereby spawning the illegal and unconstitutional policy discussed herein.

**The Policy Pattern and Practice of Selectively Arresting and Summonsing Disabled vs. Non-Disabled Vendors**

26.      Despite the City's desire to do so, it cannot *legally* force these disabled veteran vendors to move because the only restriction[1] placed on where disabled veterans possessing an SVL can vend is contained in GBL 35-7(l)(vi), which states in pertinent part, that it shall be unlawful for a disabled veteran with an SVL to:  "vend within thirty feet of an entrance to a park or within a park under the jurisdiction of the agency in such city  that  is  responsible."

27.      As such, unless a disabled veteran possessing a valid SVL is in violation of GBL 35(7), the City cannot legally force them to relinquish their spot, and therefore the City's ability to sell or lease that location to a non-disabled general vendor will be impeded.

28.      As a result of this perceived impediment coupled with the City's desire to make a profit from these locations and their inability to accomplish this legally, NYDPR officers, including P.O. B. LANGSTON, SHIELD NO. 160440, P.O. ASHA HARRIS, SHIELD NO. 160096 and P.O. "JOHN DOE"'s #1-10  have been either implicitly and/or explicitly instructed to enforce a policy to issue summonses to disabled veterans for the purpose of harassing,

---

[1] There are a number of other restrictions contained in GBL 35-a, however, GBL 35-7(1)(vi) is the only restriction placed on their ability to vend in close proximity to a park entrance.

intimidating and discouraging them from vending at desired locations despite having every legal right to do so.

29.     Specifically, *only* disabled vendors are being stopped, seized arrested and detained without probable cause, and have been issued summonses charging them either with inapplicable sections of the RCNY or failing to obey "lawful" commands without ever articulating any basis by which to establish the lawfulness of the command.

30.     In turn this targeted harassment has caused disabled veterans to pay thousands of dollars in fines, attend hundreds of court appearances and sacrifice their only livelihood in order for the City to accomplish its nefarious ends.

31.     These unconstitutional summonses are being issued with an improper motive and with malice specifically to *one* and *only one* class of individuals - namely, disabled veteran vendors - and are not being issued to non-disabled paying vendors who have leased those locations.

32.     The City's malice and improper motive can be inferred from the fact that the City is willing to accomplish illegally that which it cannot do legally, that is to constructively remove disabled veteran vendors from these locations in order to rent these spots to non-disabled vendors in violation of their rights under the Fourth, Fifth and Fourteenth Amendments of the Constitution.

**The City's Deliberate Indifference to the Clearly Established Law Regarding the Application of the GBL and RCNY to Disabled Veteran Vendors**

33.     The City is simply so blinded by the revenues that it believes are being impeded by disabled vendors that it has shown a deliberate indifference to training NYDPR officers, including P.O. B. LANGSTON, SHIELD NO. 160440, P.O. ASHA HARRIS, SHIELD NO.

160096 and P.O. "JOHN DOE"'s #1-10 to the proper application of the GBL and the RCNY and the well established rights of disabled veteran vendors.

34.    New York City officers - namely the NYDPR, including P.O. B. LANGSTON, SHIELD NO. 160440, P.O. ASHA HARRIS, SHIELD NO. 160096 and P.O. "JOHN DOE"'s #1-10 literally make thousands of these unconstitutional arrests and issue thousands of these unconstitutional summonses every year to disabled vendors, which require disabled veterans to appear before the ECB and other criminal courts in order to test the validity of each and every ticket and/or defend their innocence lest they face a default judgment, fine or a warrant for failure to appear.

35.    However, as early as 2009, the ECB had conducted numerous hearings and rendered several appellate decisions making it abundantly clear that the requirements of the RCNY simply do not apply to disabled veterans carrying a valid SVL because the statutory confines of RCNY are superseded by GBL 35-a when it is applied to disabled veterans.

36.    Additionally, every year these summonses are dismissed in the thousands - including the summonses issued to the plaintiffs herein - because the issuing/arresting officer is wholly unable to articulate the reason why the command to move was lawful thus negating any crime or violation of law.

37.    Notwithstanding, the NYDPR officers, including P.O. B. LANGSTON, SHIELD NO. 160440, P.O. ASHA HARRIS, SHIELD NO. 160096 and P.O. "JOHN DOE"'s #1-10 still continue to issue these illegal tickets at an exponential rate causing continuous constitutional violations to the plaintiffs herein - namely repeatedly being falsely arrested and selectively prosecuted for having committed no crime or violation of law.

38.    The utter failure to train and/or communicate the proper application of these statutes to NYDPR officers, including P.O. B. LANGSTON, SHIELD NO. 160440, P.O. ASHA

HARRIS, SHIELD NO. 160096 and P.O. "JOHN DOE"'s #1-10 has resulted in hundreds - if not thousands - of constitutional violations of disabled veteran vendors throughout the City and the plaintiffs herein and it is only disabled veteran vendors those with the impetus to fight their summons at ECB or through appeal whose rights are eventually vindicated and the fines rescinded.

## JURISDICTION

39.    This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

40.    Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(a) and 1367.

## VENUE

41.    Venue is properly laid in the Southern District of New York under U.S.C. § 1391(b), in that this is the District in which a substantial part of the events or omissions giving rise to the claim occurred.

## JURY DEMAND

42.    Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

43.    Plaintiff ARMANDO CRESCENZI is a Caucasian American male disabled veteran and at all relevant times a resident of the City and State of New York.

44.    Plaintiff JAMES KENNEDY is an African American male disabled veteran and at all relevant times a resident of the City and State of New York.

45.    Plaintiff ALBERT SIMMONS is an African American male disabled veteran and at all relevant times a resident of the City and State of New York.

46.    Plaintiff ORAL FIELDS is an African American male disabled veteran and at all relevant times a resident of the City and State of New York.

47.     Plaintiff HOWARD DALTON is an African American male disabled veteran and at all relevant times a resident of the City and State of New York.

48.     At all times hereinafter mentioned, the individually named defendants, P.O. B. LANGSTON, SHIELD NO. 160440, P.O. ASHA HARRIS, SHIELD NO. 160096 and P.O. "JOHN DOE"'s #1-10, were duly sworn NYDPR officers of said department and were acting under the supervision of said department and according to their official duties.

49.     At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

50.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant, CITY OF NEW YORK.

51.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant, CITY OF NEW YORK.

52.     Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

53.     Defendant CITY OF NEW YORK maintains the NYDPR, a duly authorized public authority and/or parks department, authorized to perform all functions of a parks department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York, who was responsible for the policy, practice, supervision, implementation and conduct of all NYDPR matters and was responsible for the appointment, training, supervision, and conduct

of all NYDPR personnel, including the defendants referenced herein.  In addition, at all relevant times, Defendant City was responsible for enforcing the rules of the NYDPR, and for ensuring that NYDPR personnel obey the laws of the United States and of the State of New York.

54.    At all relevant times defendant VERONICA M. WHITE was the Chairman of the New York City Department of Parks and, as such, was a "policymaker" who made and enforced the policies of the NYDPR, and who acted in her capacity as agent, servant, and employee of defendant City, within the scope of her employment as such, and under color of state law.

55.    That at all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York and/or New York, Bronx, Kings, Queens and Richmond Counties.

56.    During all times mentioned in this complaint, the defendants and each of them separately and in concert, engaged in acts and/or omissions which constituted deprivations of plaintiffs' constitutional rights, equal protections and the privileges and immunities of the plaintiffs, and while these acts were carried out under color of law, they had no justification or excuse, and were instead illegal, improper, and unrelated to any activity in which state officers may appropriately and legally engage in the course of protecting persons and/or ensuring civil order.

## **FACTS**

57.    Plaintiff ARMANDO CRESCENZI is a fifty (50) year old disabled veteran.

58.    Plaintiff JAMES KENNEDY is a sixty one (61) year old disabled veteran.

59.    Plaintiff ORAL FIELDS is a fifty one (51) year old disabled veteran.

60.    Plaintiff ALBERT SIMMONS is a sixty (60) year old disabled veteran.

61.    Plaintiff HOWARD DALTON is a fifty five (55) year old disabled veteran.

***The Constitutional Violations against Armando Crescenzi***

62.     At all relevant times mentioned herein plaintiff ARMANDO CRESCENZI was and is a disabled veteran in possession of a valid SVL pursuant his status as a disabled veteran.

63.     At all relevant times mentioned herein, plaintiff CRESCENZI, operates a food vending cart at various areas throughout New York City where only individuals who possess a disabled veteran SVL are allowed to vend without a permit as required by the RCNY.

64.     At all relevant times mentioned herein, plaintiff CRESCENZI has always operated his vending cart in compliance with GBL § 35, which governs disabled vendors, concerning his proximity to park entrances, the sidewalk and the length and width of his vending cart.

65.     At all relevant times mentioned herein, plaintiff CRESCENZI has always operated his vending cart in compliance with all laws applicable to disabled veteran vendors possessing SVL's and was and is legally entitled to vend in the places where the incidents giving rise to this lawsuit took place.

66.     On or around the beginning of 2010, plaintiff CRESCENZI began to see a pattern of targeted harassment directed at him and other disabled veteran vendors possessing SVL's whereby members of the NYDPR, including P.O. B. LANGSTON, SHIELD NO. 160440, P.O. ASHA HARRIS, SHIELD NO. 160096 and P.O. "JOHN DOE"'s #1-10 were stopping, detaining, seizing, arresting and issuing disabled veteran vendors summonses for violations of RCNY.

67.     Specifically, plaintiff CRESCENZI and other disabled veteran vendors possessing valid SVL's were being falsely arrested, charged  and selectively prosecuted for violating sections of the RCNY that either do not apply to disabled veterans - namely 56 RCNY 1-03(b)(6)

or 1-05(b) - or for refusing to comply with orders - 56 RCNY 1-03(c)(1) - that were not lawfully given.

68.    In total, from 2010 until present plaintiff CRESCENZI has been falsely arrested and received over one hundred (100) summonses in violation of RCNY without any probable cause, for crimes that he did not commit or that were entirely inapplicable to disabled veteran vendors.

69.    In connection with those false summonses plaintiff CRESCENZI has been required to make hundreds of court appearances in connection with these false summonses, pay thousands of dollars in fines and spend hundreds of hours challenging these citations at the appellate level.

70.    Upon information and belief, all of the summonses that have been issued to plaintiff CRESCENZI have or will be dismissed due to the inapplicability of 56 RCNY 1-03(b)(1) or 1-05(b) and/or their failure to articulate or establish any criminal or summonsable behavior whatsoever that would implicate a lawful order under RCNY 103(c)(1).

71.    At no time during the relevant statutory period was plaintiff CRESCENZI ever in violation of 56 RCNY 1-03(b)(6) or 1-05(b) because under the law it is legally impossible for disabled veterans who possess SVL's to violate those laws given that the RCNY is *superseded* by GBL 35-a.

72.    At no time during the relevant statutory period was plaintiff CRESCENZI ever in violation of any of the proscriptions of GBL 35-a - the applicable laws governing disabled veteran vendors.

73.    At no time during the relevant statutory period was plaintiff CRESCENZI ever in violation of 56 RCNY 1-03(c)(1) because he never disobeyed any order that could be considered

"lawful" under New York law as he was always in compliance with relevant provision of the GBL - the only applicable law governing disabled veteran vendors.

74.     At no time during the relevant statutory period did plaintiff CRESCENZI commit any crime or violation of law to justify his arrest, seizure, detention or the issuance of any of the aforementioned summonses.

75.     Upon information and belief, the false arrests, seizures and false summonses are only being directed at disabled vendors with malice and for the improper purpose of financial gain at the expense of the legal rights of disabled veterans, while non-disabled vendors remain unaffected.

76.     As a result of the actions and policy promulgated by defendants plaintiff has suffered injuries of a constitutional dimension, including but not limited to, existing and continuing violations of his civil and constitutional rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution.

### *The Constitutional Violation Against James Kennedy*

77.     At all relevant times mentioned herein plaintiff JAMES KENNEDY was and is a disabled veteran in possession of a valid special vending license pursuant his status as a disabled veteran.

78.     At all relevant times mentioned herein, plaintiff KENNEDY, operates a food vending cart at various areas throughout New York City where only individuals who possess a disabled veteran specialized vending license are allowed to vend without a permit as required by the RCNY.

79.     At all relevant times mentioned herein, plaintiff KENNEDY in operation of his vending cart always operates in compliance with the rules governing disabled vendors with

SVL's in accordance with GBL 35-a concerning his proximity to park entrances and the length and width of his vending cart.

80.     At all relevant times mentioned herein, plaintiff KENNEDY has always operated his vending cart in compliance with all laws applicable to disabled veteran vendors possessing SVL's and was legally entitled to vend in the places where he chose to do so.

81.     On or around the beginning of June 2012, plaintiff KENNEDY began to become a target of harassment whereby members of the NYDPR, including P.O. B. LANGSTON, SHIELD NO. 160440, P.O. ASHA HARRIS, SHIELD NO. 160096 and P.O. "JOHN DOE"'s #1-10 were stopping, detaining, seizing, arresting and issuing disabled veteran vendors summonses for violations of RCNY.

82.     Specifically, plaintiff KENNEDY and other disabled veteran vendors possessing valid SVL's were being falsely arrested and charged with violating sections of the RCNY that either do not apply to disabled veterans - namely 56 RCNY 1-03(b)(6) or 1-05(b) - or for refusing to comply with orders - 56 RCNY 1-03(c)(1) - that were not lawfully given.

83.     In total, from approximately June 2012 until present plaintiff KENNEDY has been falsely arrested and received over twenty (20) summonses in violation of RCNY without any probable cause, cited for crimes that he did not commit or that were entirely inapplicable to him to begin with.

84.     In connection with those false summonses plaintiff KENNEDY has been required to make hundreds of court appearances in connection with the charges associated with these false summonses, pay thousands of dollars in fines and spend hundreds of hours challenging these citations at the appellate level.

85.    Upon information and belief, all of the summonses that have been issued to plaintiff KENNEDY have or will be dismissed due to their failure to articulate or establish any criminal or summonsable behavior whatsoever.

86.    At no time during the relevant statutory period was plaintiff KENNEDY ever in violation of 56 RCNY 1-03(b)(6) or 1-05(b) because under the law it is legally impossible for disabled veterans who possess SVL's to violate those laws given that the RCNY is superseded by GBL 35-a.

87.    At no time during the relevant statutory period was plaintiff KENNEDY ever in violation of any of the proscriptions of GBL 35-a - the applicable laws governing disabled veteran vendors.

88.    At no time during the relevant statutory period was plaintiff KENNEDY ever in violation of 56 RCNY 1-03(c)(1) because he never disobeyed any order that could be considered "lawful" under New York law as he was always in compliance with GBL - the only applicable law governing disabled veteran vendors.

89.    At no time during the relevant statutory period did plaintiff KENNEDY commit any crime or violation of law to justify the arrest, seizure, detention or issuance of any of the aforementioned summonses.

90.    Upon information and belief, the false arrests, seizures and false summonses are only being directed at the holders of disabled vendors licenses and not to non-disabled vendors with malice and for the improper purpose of financial gain above all else and at the expense of disabled veterans.

91.    As a result of the actions and policy promulgated by defendants plaintiff has suffered injuries of a constitutional dimension, including but not limited to, existing and

continuing violations of his civil and constitutional rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution.

### *The Constitutional Violation Against Oral Fields*

92.    At all relevant times mentioned herein plaintiff ORAL FIELDS was and is a disabled veteran in possession of a valid special vending license pursuant his status as a disabled veteran.

93.    At all relevant times mentioned herein, plaintiff FIELDS, operates a food vending cart at various areas throughout New York City where only individuals who possess a disabled veteran specialized vending license are allowed to vend without a permit as required by the RCNY.

94.    At all relevant times mentioned herein, plaintiff FIELDS in operation of his vending cart always operates in compliance with the rules governing disabled vendors with SVL's in accordance with GBL 35-a concerning his proximity to park entrances and the length and width of his vending cart.

95.    At all relevant times mentioned herein, plaintiff FIELDS has always operated his vending cart in compliance with all laws applicable to disabled veteran vendors possessing SVL's and was legally entitled to vend in the places where he chose to do so.

96.    On or around the beginning of January 2012, plaintiff FIELDS began to become a target of harassment whereby members of the NYDPR, including P.O. B. LANGSTON, SHIELD NO. 160440, P.O. ASHA HARRIS, SHIELD NO. 160096 and P.O. "JOHN DOE"'s #1-10 were stopping, detaining, seizing, arresting and issuing disabled veteran vendors summonses for violations of RCNY.

97.    Specifically, plaintiff FIELDS and other disabled veteran vendors possessing valid SVL's were being falsely arrested and charged with violating sections of the RCNY that

either do not apply to disabled veterans - namely 56 RCNY 1-03(b)(6) or 1-05(b) - or for refusing to comply with orders - 56 RCNY 1-03(c)(1) - that were not lawfully given.

98.     In total, from approximately January 2012 until present plaintiff FIELDS has been falsely arrested and received over sixty (60) summonses in violation of RCNY without any probable cause, cited for crimes that he did not commit or that were entirely inapplicable to him to begin with.

99.     In connection with those false summonses plaintiff FIELDS has been required to make hundreds of court appearances in connection with the charges associated with these false summonses, pay thousands of dollars in fines and spend hundreds of hours challenging these citations at the appellate level.

100.     Upon information and belief, all of the summonses that have been issued to plaintiff FIELDS have or will be dismissed due to their failure to articulate or establish any criminal or summonsable behavior whatsoever.

101.     At no time during the relevant statutory period was plaintiff FIELDS ever in violation of 56 RCNY 1-03(b)(6) or 1-05(b) because under the law it is legally impossible for disabled veterans who possess SVL's to violate those laws given that the RCNY is superseded by GBL 35-a.

102.     At no time during the relevant statutory period was plaintiff FIELDS ever in violation of any of the proscriptions of GBL 35-a - the applicable laws governing disabled veteran vendors.

103.     At no time during the relevant statutory period was plaintiff FIELDS ever in violation of 56 RCNY 1-03(c)(1) because he never disobeyed any order that could be considered "lawful" under New York law as he was always in compliance with GBL - the only applicable law governing disabled veteran vendors.

104.    At no time during the relevant statutory period did plaintiff FIELDS commit any crime or violation of law to justify the arrest, seizure, detention or issuance of any of the aforementioned summonses.

105.    Upon information and belief, the false arrests, seizures and false summonses are only being directed at the holders of disabled vendors licenses and not to non-disabled vendors with malice and for the improper purpose of financial gain above all else and at the expense of disabled veterans.

106.    As a result of the actions and policy promulgated by defendants plaintiff has suffered injuries of a constitutional dimension, including but not limited to, existing and continuing violations of his civil and constitutional rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution.

### *The Constitutional Violation Against Albert Simmons*

107.    At all relevant times mentioned herein plaintiff ALBERT SIMMONS was and is a disabled veteran in possession of a valid special vending license pursuant his status as a disabled veteran.

108.    At all relevant times mentioned herein, plaintiff SIMMONS, operates a food vending cart at various areas throughout New York City where only individuals who possess a disabled veteran specialized vending license are allowed to vend without a permit as required by the RCNY.

109.    At all relevant times mentioned herein, plaintiff SIMMONS in operation of his vending cart always operates in compliance with the rules governing disabled vendors with SVL's in accordance with GBL 35-a concerning his proximity to park entrances and the length and width of his vending cart.

110.    At all relevant times mentioned herein, plaintiff SIMMONS has always operated his vending cart in compliance with all laws applicable to disabled veteran vendors possessing SVL's and was legally entitled to vend in the places where he chose to do so.

111.    On or around the beginning of January 2011, plaintiff SIMMONS began to become a target of harassment whereby members of the NYDPR, including P.O. B. LANGSTON, SHIELD NO. 160440, P.O. ASHA HARRIS, SHIELD NO. 160096 and P.O. "JOHN DOE"'s #1-10 were stopping, detaining, seizing, arresting and issuing disabled veteran vendors summonses for violations of RCNY.

112.    Specifically, plaintiff SIMMONS and other disabled veteran vendors possessing valid SVL's were being falsely arrested and charged with violating sections of the RCNY that either do not apply to disabled veterans - namely 56 RCNY 1-03(b)(6) or 1-05(b) - or for refusing to comply with orders - 56 RCNY 1-03(c)(1) - that were not lawfully given.

113.    In total, from approximately January 2011 until present plaintiff SIMMONS has been falsely arrested and received over forty (40) summonses in violation of RCNY without any probable cause, cited for crimes that he did not commit or that were entirely inapplicable to him to begin with.

114.    In connection with those false summonses plaintiff SIMMONS has been required to make hundreds of court appearances in connection with the charges associated with these false summonses, pay thousands of dollars in fines and spend hundreds of hours challenging these citations at the appellate level.

115.    Upon information and belief, all of the summonses that have been issued to plaintiff SIMMONS have or will be dismissed due to their failure to articulate or establish any criminal or summonsable behavior whatsoever.

116.    At no time during the relevant statutory period was plaintiff SIMMONS ever in violation of 56 RCNY 1-03(b)(6) or 1-05(b) because under the law it is legally impossible for disabled veterans who possess SVL's to violate those laws given that the RCNY is superseded by GBL 35-a.

117.    At no time during the relevant statutory period was plaintiff SIMMONS ever in violation of any of the proscriptions of GBL 35-a - the applicable laws governing disabled veteran vendors.

118.    At no time during the relevant statutory period was plaintiff SIMMONS ever in violation of 56 RCNY 1-03(c)(1) because he never disobeyed any order that could be considered "lawful" under New York law as he was always in compliance with GBL - the only applicable law governing disabled veteran vendors.

119.    At no time during the relevant statutory period did plaintiff SIMMONS commit any crime or violation of law to justify the arrest, seizure, detention or issuance of any of the aforementioned summonses.

120.    Upon information and belief, the false arrests, seizures and false summonses are only being directed at the holders of disabled vendors licenses and not to non-disabled vendors with malice and for the improper purpose of financial gain above all else and at the expense of disabled veterans.

121.    As a result of the actions and policy promulgated by defendants plaintiff has suffered injuries of a constitutional dimension, including but not limited to, existing and continuing violations of his civil and constitutional rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution.

### *The Constitutional Violation Against Howard Dalton*

122.    At all relevant times mentioned herein plaintiff HOWARD DALTON was and is a disabled veteran in possession of a valid special vending license pursuant his status as a disabled veteran.

123.    At all relevant times mentioned herein, plaintiff DALTON, operates a food vending cart at various areas throughout New York City where only individuals who possess a disabled veteran specialized vending license are allowed to vend without a permit as required by the RCNY.

124.    At all relevant times mentioned herein, plaintiff DALTON in operation of his vending cart always operates in compliance with the rules governing disabled vendors with SVL's in accordance with GBL 35-a concerning his proximity to park entrances and the length and width of his vending cart.

125.    At all relevant times mentioned herein, plaintiff DALTON has always operated his vending cart in compliance with all laws applicable to disabled veteran vendors possessing SVL's and was legally entitled to vend in the places where he chose to do so.

126.    On or around October 2011, plaintiff DALTON began to become a target of harassment whereby members of the NYDPR, including P.O. B. LANGSTON, SHIELD NO. 160440, P.O. ASHA HARRIS, SHIELD NO. 160096 and P.O. "JOHN DOE"'s #1-10 were stopping, detaining, seizing, arresting and issuing disabled veteran vendors summonses for violations of RCNY.

127.    Specifically, plaintiff DALTON and other disabled veteran vendors possessing valid SVL's were being falsely arrested and charged with violating sections of the RCNY that either do not apply to disabled veterans - namely 56 RCNY 1-03(b)(6) or 1-05(b) - or for refusing to comply with orders - 56 RCNY 1-03(c)(1) - that were not lawfully given.

128.    In total, from approximately June 2012 until present plaintiff DALTON has been falsely arrested and received over forty (40) summonses in violation of RCNY without any probable cause, cited for crimes that he did not commit or that were entirely inapplicable to him to begin with.

129.    In connection with those false summonses plaintiff DALTON has been required to make hundreds of court appearances in connection with the charges associated with these false summonses, pay thousands of dollars in fines and spend hundreds of hours challenging these citations at the appellate level.

130.    Upon information and belief, all of the summonses that have been issued to plaintiff DALTON have or will be dismissed due to their failure to articulate or establish any criminal or summonsable behavior whatsoever.

131.    At no time during the relevant statutory period was plaintiff DALTON ever in violation of 56 RCNY 1-03(b)(6) or 1-05(b) because under the law it is legally impossible for disabled veterans who possess SVL's to violate those laws given that the RCNY is superseded by GBL 35-a.

132.    At no time during the relevant statutory period was plaintiff DALTON ever in violation of any of the proscriptions of GBL 35-a - the applicable laws governing disabled veteran vendors.

133.    At no time during the relevant statutory period was plaintiff DALTON ever in violation of 56 RCNY 1-03(c)(1) because he never disobeyed any order that could be considered "lawful" under New York law as he was always in compliance with GBL - the only applicable law governing disabled veteran vendors.

134.    At no time during the relevant statutory period did plaintiff DALTON commit any crime or violation of law to justify the arrest, seizure, detention or issuance of any of the aforementioned summonses.

135.    Upon information and belief, the false arrests, seizures and false summonses are only being directed at the holders of disabled vendors licenses and not to non-disabled vendors with malice and for the improper purpose of financial gain above all else and at the expense of disabled veterans.

136.     As a result of the actions and policy promulgated by defendants plaintiff has suffered injuries of a constitutional dimension, including but not limited to, existing and continuing violations of his civil and constitutional rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution.

## FIRST CLAIM FOR RELIEF FOR DEPRIVATION OF
## FEDERAL RIGHTS NDER 42 U.S.C. § 1983

137.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "136" with the same force and effect as if fully set forth herein.

138.    All of the aforementioned acts of defendants, their agents, servants and employees, were carried out under the color of state law.

139.    All of the aforementioned acts deprived plaintiffs of the rights, equal protections, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

140.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as NYDPR officers, with all of the actual and/or apparent authority attendant thereto.

141.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as NYDPR officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Department of Parks and Recreation, all under the supervision of ranking officers of said department.

142.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983

143.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "142" with the same force and effect as if fully set forth herein.

144.    As a result of defendants' aforementioned conduct, plaintiffs were subjected to an illegal, improper and false arrest in the form of detention and the issuance of summonses by the defendants and prosecuted by the defendants in criminal proceedings, without any probable cause, privilege, consent or any legitimate basis under the law.

145.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiffs sustained the damages hereinbefore alleges.

146.    As a result of the foregoing, plaintiffs' liberty was restricted for an extended period of time, and they were put in fear for their safety, were humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

## THIRD CLAIM FOR RELIEF VIOLATION OF
## <u>SELECTIVE ENFORCEMENT/PROSECUTION UNDER 42 U.S.C. § 1983</u>

147.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "146" with the same force and effect as if fully set forth herein.

148.    As a result of defendants' aforementioned conduct, plaintiffs were subjected to selective prosecution based on their status as disabled veterans because the City has the maliciously and with improper motive attempted to constructively evict these vendors from areas in which they are legally entitled to be in order to sell leases to those areas to non-disabled vendors who do not share exempt status under the GBL or RCNY.

149.    The conduct of the City and NYDPR officers including P.O. B. LANGSTON, SHIELD NO. 160440, P.O. ASHA HARRIS, SHIELD NO. 160096 and P.O. "JOHN DOE"'s #1-10 has been a pattern of harassment and intimidation all waged in an effort to scare, intimidate and discourage disabled vendors from returning to those locations in order to make those areas available to non-disabled vendors for the City's own financial gain.

150.    Other similarly situated non-disabled vendors have not been impacted or targeted in this campaign of harassment, intimidation and selective enforcement of the RCNY, in violation of the rights of disabled veteran vendors as secured by the Fifth and Fourteenth Amendments to the Constitution.

151.    As a result of the foregoing, plaintiffs' liberty was restricted for an extended period of time, and they were put in fear for their safety, were humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

### THIRD CLAIM FOR RELIEF
### <u>MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983</u>

152.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "151" with the same force and effect as if fully set forth herein.

153.    Defendants have maliciously and with improper motive prosecuted the plaintiff's in this matter for violations of the GBL and/or RCNY that either never occurred or are entirely inapplicable to disabled vendors.

154.    Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiffs.

155.    Defendants knew that they lacked probable cause to initiate criminal proceedings and prosecute plaintiffs for the violations of the GBL and/or RCNY cited in the tickets issued to plaintiffs.

156.    Defendants acted with malice in initiating criminal and civil proceedings against plaintiffs.

157.    Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiffs in that they submitted these unconstitutional summons to the ECB so that the plaintiffs would be prosecuted and caused their officers to give testimony in connection with these illegal summonses.

158.    Probable cause was lacking to continue the proceedings against plaintiffs.

159.    Defendants acted with malice in continuing criminal proceedings against plaintiffs.

160.    Defendants misrepresented and falsified evidence throughout all phases of the criminal proceedings in connection with these unconstitutional summonses.

161.    Notwithstanding the perjurious, fraudulent and unconstitutional conduct of defendants, theses summonses have all been terminated in plaintiffs' favor and the charges against them have been dismissed over the course of the statutory period.

162.    As a result of the foregoing, plaintiffs' liberty was restricted for an extended period of time, they were put in fear for their safety, and were humiliated and subjected to handcuffing and other physical restraints without probable cause.

### FOURTH CLAIM FOR RELIEF
### MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983

163.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "162" with the same force and effect as if fully set forth herein.

164.    Defendants caused the issuance of legal process to place plaintiff under arrest and force them to attend unwarranted legal proceedings at the ECB.

165.    Defendants initiated and procured the arrest of plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process, namely, to constructively remove plaintiff's from vending in areas where they are legally allowed to vend in order to entice paying vendors to pay for bids on those same locations.

166.    Defendants acted with intent to do harm to plaintiffs, without excuse or justification.

167.    As a result of the foregoing, plaintiffs' liberty was restricted for an extended period of time, they were put in fear for their safety, they suffered economic harm and they were humiliated and subjected to restrictions on their liberty without probable cause.

**FIFTH CLAIM FOR RELIEF FOR**
**MUNICIPAL LIABILITYUNDER 42 U.S.C. § 1983**

168.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "167" as if the same were more fully set forth at length herein.

169.    Defendants caused plaintiffs to be issued summonses in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said summonses were not based on probable cause or any legitimate basis under the law in violation of the constitutional rights of plaintiffs.

170.    Defendants caused plaintiffs to be issued summonses in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said summonses were not based on probable cause or any legitimate basis under the law and knowing that plaintiffs would be required to appear in court to be prosecuted under the aforementioned unconstitutionally issued summonses in violation of the constitutional rights of plaintiffs.

171.    The acts complained of were carried out by the aforementioned individual defendants and subordinate officers of the NYDPR officers, including P.O. B. LANGSTON, SHIELD NO. 160440, P.O. ASHA HARRIS, SHIELD NO. 160096 and P.O. "JOHN DOE"'s #1-10 in their capacities as NYDPR officers and officials, with all the actual and/or apparent authority attendant thereto.

172.    The acts complained of were carried out by the aforementioned individual defendants and subordinate NYDPR officers, including P.O. B. LANGSTON, SHIELD NO. 160440, P.O. ASHA HARRIS, SHIELD NO. 160096 and P.O. "JOHN DOE"'s #1-10 in their capacities as NYDPR officers and officials pursuant to the customs, policies, usages, practices,

procedures, and rules of the City of New York and NYDPR, all under the supervision of VERONICA M. WHITE and other ranking officers of said departments.

173.    The pattern of unconstitutional issuance of summonses established by policy-making officials within the NYDPR and the City of New York, the failure to train officers and employees regarding the requisite level of probable cause required for the issuance of said summonses, and the failure to supervise and/or discipline staff responsible for the unconstitutional issuance of summonses are so institutionalized as to represent  a policy or custom of unconstitutional violations that have resulted in the deprivation of plaintiffs' rights.

174.    The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, the NYDPR include, but are not limited to, the following unconstitutional practices:

    i.    Explicitly and/or implicitly establishing a policy of falsely arresting, summonsing and selectively prosecuting disabled veteran vendors in order scare, intimidate, harass or otherwise constructively remove them from vending in areas that the City desires to lease to non-disabled vendors;

    ii.    Issuing summonses without probable cause or any legal basis in order to promulgate the policy of selectively prosecuting disabled veteran vendors;

    iii.    Disproportionately issuing summonses to disabled veteran vendors in violation their rights under the Equal Protection Clause;

    iv.    Showing deliberate indifference to whether the summonses issued pursuant to that were issued based on probable cause or with the proper application of the RCNY and the GBL;

    v.    Showing deliberate indifference to the training of subordinate officers to not issue summonses unless they are issued upon probable cause or a basis under the law in accordance with the proper standards under the GBL and RCNY;

    vi.    Showing deliberate indifference to the supervision of subordinate officers in the NYDPR for the issuance of summonses in determining whether they were legitimately issued;

    vii.    Issuing the aforementioned summonses notwithstanding clearly established law prohibiting the issuance of these summonses; and/or

      viii.    City policymakers continued constructive acquiescence to repeated and continuing constitutional violations of disabled veteran vendors who are receiving these illegal summonses;

175.    The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as is the case with the five (5) plaintiffs in this matter as well as the NYDPR's own statistics and statistics and reports maintained by other City Agencies.

176.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York, and NYDPR constituted a deliberate indifference to the safety, well-being and constitutional rights of plaintiffs.

177.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York, and NYDPR were the direct and proximate cause of the constitutional violations suffered by plaintiffs as alleged herein.

178.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York, and NYDPR were the moving force behind the constitutional violations suffered by plaintiffs as alleged herein.

179.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York, and NYDPR, plaintiffs were issued summonses without probable cause or any legal basis and in many instances were subjected to detention, search, restraints, handcuffing and verbal and mental abuse in violation of their constitutional rights.

180.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York, and NYDPR, plaintiffs were caused to appear in court to be prosecuted on these unconstitutionally issued summonses and in many instances causing them to lose time from work or school in violation of their constitutional rights.

181.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York, and NYDPR, plaintiffs were targeted, stopped and issued unconstitutional summonses based on an impermissible classification under the Equal Protection Clause of the Fourteenth Amendment, their race.

182.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of plaintiffs.

183.    Defendants, collectively and individually, while acting under color of state law, acquiesced in and encouraged a pattern of unconstitutional conduct by subordinate NYDPR officers, and were directly responsible for the violation of the constitutional rights of plaintiffs.

184.    All of the foregoing acts by defendants deprived plaintiffs of federally protected rights, including, but not limited to, the right:

ii.    Not to be deprived of liberty without due process of law;

iii.    To be free from search, seizure and arrest not based upon probable cause; and,

iv.    To receive equal protection under the law;

**WHEREFORE**, plaintiffs request the following relief jointly and severally as against all of the defendants:

1.  A judgment declaring that defendants have committed the violations of law alleged in this action;

2.  An order preliminarily and permanently enjoining and directing defendants to cease enforcement of this policy for the issuance of illegal summonses;

3.  Directing that immediate remedial training on the proper and legal grounds for the issuance of summonses be provided to all current members of the NYDPR (in the Precincts and the NYDPR academy);

4.  Directing defendants to put in place a system for monitoring the summonses issued and the legal basis for their issuance so that baseless summonses that have been issued can be immediately dismissed;

5.  Compensatory damages against all defendants in an amount to be proven at trial;

6.  Punitive damages against all defendants, except the City, in an amount to be proven at trial;

7.  An order awarding disbursements, costs, and attorneys' fees pursuant to 42 U.S.C. § 1988;

8.  All matters currently pending before the ECB and other criminal courts relating to the four plaintiffs status as disabled vendors be stayed until resolution of the current proceeding; and

9.  Such other further relief that the court may deem just and proper.


Dated: New York, New York
       May 12, 2014



                              BY:_____/S_____
                                 COHEN & FITCH LLP
                                 JOSHUA P. FITCH (JF-2813)
                                 GERALD M. COHEN (GC-0414)
                                 233 Broadway, Suite 1800
                                 New York, N.Y. 10279
                                 (212) 374-9115
                                 jfitch@cohenfitch.com
                                 gcohen@cohenfitch.com